## THE LILY.

### No. 6179.

District Court, S. D. California, Central Division.

May 11, 1933.

The report of Commissioner David B. Head is as follows:

The cause was set down for the taking of testimony on February 2, 1933. The following appearances were made: J. W. Cupp, Esq. and R. L. Gray, Esq. proctors for the libelants and intervening libelants, E. E. Doherty, Esq., proctor for the respondents and claimant. Testimony was taken on that date, and on February 4th and February 7th. After the parties rested, negotiations were had looking to a settlement of the controversy but without result.

The action is in rem and in personam for wages alleged to be due the libelants and intervening libelants (hereinafter included when the term "libelants" is used) for services rendered as members of the crew of the schooner Lily.

The facts are found to be as follows:

(1) That the schooner Lily is a domestic vessel of 149.12 gross tons now within the jurisdiction of this court; and that the claimant Hugh G. Edwards is the owner thereof.

(2) That the said Hugh G. Edwards and the respondent C. W. Wilkins, who was in fact the master of the vessel, began making plans for a salvage voyage to Mexican waters, and that in furtherance of these plans the respondents Edwards and Wilkins began negotiations with the several libelants with a view of obtaining their services as members of the crew.

(3) That these negotiations resulted in agreements between the parties that the libeling members of the crew would join the crew of the vessel for the purposes aforesaid, their compensation to be determined by a percentage of the profits of the venture.

(4) That prior to sailing from Los Angeles Harbor purported shipping articles were signed by C. W. Wilkins and William Lahti by their own hands. That the said articles were not signed by the libelants Olaf Olsen, William Diemunsch, John Barrett, and Sverre Grannum but that their names were written on the shipping articles by the respondent Edwards; that the original of the shipping articles was retained by the said Edwards and a copy thereof filed in the customs house at Los Angeles; that the purported shipping articles were not executed and

filed in accordance with the laws relating thereto, and are null and void and of no effect herein; that no other agreement in writing was made.

(5) That on June 24, 1932, the respondent vessel, with the owner, master, and crew aboard, sailed from Los Angeles Harbor for the Mexican Coast, clearing for Magdalena Bay, Mexico, carrying a cargo of oil; that the said cargo was discharged in Mexico; that the respondent Edwards received $600 as freightage on the said cargo; that, after discharging the cargo of oil, the respondent vessel proceeded to the wreck of the S. S. Columbia and carried on salvage operations, recovering thereby certain moneys and valuables; that the vessel then proceeded to the wreck of a fishing vessel, the Vitality, where further salvage operations were carried on and certain engines and gear recovered.

(6) Upon the completion of these operations, the respondent vessel proceeded to San Diego Harbor, arriving there October 31, 1932, where all but the libelant Olsen left the vessel; that the libelant Olsen remained on the vessel later bringing her to Los Angeles Harbor, January 4, 1932.

(7) That after the completion of the voyage a dispute arose between the owner and the libeling crew members; that negotiations took place resulting in the payment of several sums to the libelants as follows:

Barrett ........................... $ 55.00
Grannum ......................... 135.00
Olsen ........................... 220.00
Lahti ........................... 300.00
Diemunsch ....................... 85.00

That releases were signed by the libelants Grannum, Olsen, and Diemunsch. (Exhibits A and C.)

(8) That the services rendered by the various libelants correspond to the following ratings:

| Olsen | First Mate |
| Lahti | Diver |
| Barrett | Chief Engineer |
| Diemunsch | Able Seaman |
| Grannum | Cook |

(9) That at the time of this voyage the going wages for such services were:

First Mate ........ $125.00 per month
Chief Engineer .... 200.00 per month
Cook ............. 100.00 per month
Able Seaman ...... 60.00 per month
Diver ............ 175.00 per month plus 7.00 per day for diving

270

## The Law of the Case.

The libelants objected to introduction of any parol evidence of specific agreements between the owner and master and the crew. They contend that they are entitled to recover wages computed on the basis of the highest wage paid at the port of shipping for similar voyages within three months of the time of shipping. No findings have been made as to the terms of the contracts which were actually made. The case has been considered upon the libelants' theory. Their case must stand or fall upon that theory.

▉ The libelants have taken the position that the Act of July 20, 1790 (1 Stat. 131), as interpreted in the case of The Crusader, 6 Fed. Cas. page 926, No. 3,456, is controlling here. The act of 1790 provided that the master of a ship bound from a port in the United States to any foreign port, or of any ship of fifty tons or over bound from a port in one state to a port in any other than an adjoining state, must make an agreement in writing or print with every seaman on board in a prescribed form. It further provided that the failure of the master to so do made him liable to pay the seamen the highest wages which shall have been given at place of shipping for a similar voyage within three months before the shipping. The Crusader held that parol evidence was not admissible to show that there had been a share agreement entered into, but that the failure to comply with the statute made the master liable. This case was decided in 1837 by Judge Ware in the District of Maine.

June 7, 1872, Congress enacted the so-called Shipping Commissioners Act. Section 12 of that act (17 Stat. 264) required the master of every ship bound to a foreign port or of a ship of seventy-five tons bound from one coast to the other to make an agreement in writing in certain terms with his seamen before a shipping commissioner. A subsequent act was passed January 15, 1873 (17 Stat. 410) amending section 12 of the act of 1872 by adding this proviso: "Provided further, That this section shall not apply to masters of vessels when engaged in trade between the United States and the British North American possessions, or the West India Islands, or the Republic of Mexico."

With the act of 1872 so amended and the act of 1790 still in force, the case of The City of Mexico, 5 Fed. Cas. page 773, No. 2,756, was decided in the District Court for the Eastern District of New York and affirmed U. S. v. The City of Mexico, Fed. Cas. No. 14,797. This case held that the amendment of section 12 of the act of 1872 by the act of 1873 did not relieve a master of the duty of entering into a written agreement with a seaman for a voyage to a port in the republic of Mexico, and that the act of 1790 governed the shipment of seamen on voyages to the republic of Mexico. Undoubtedly this was the law at the time The City of Mexico Case arose. The cause of action accrued after the amendatory act of 1873, and the case was decided in October, 1873. The rule of The Crusader Case was still good at that time. Libelants' case is based upon the act of 1790 and the decisions in The Crusader and City of Mexico Cases. (See Libelants' Points and Authorities.)

Upon consideration of this case, the commissioner was unable to reconcile the libelants' theory with the statutes as they now appear in the United States Code. What is now sections 574 and 575 of title 46 (46 USCA §§ 574, 575) was derived from the act of 1790. Section 574 applies only to coasting voyages, and reads as follows:

"§ 574. *Shipping Articles for Vessels in Coasting Trade.* Every master of any vessel of the burden of fifty tons or upward, bound from a port in one State to a port in any other than an adjoining State, except vessels of the burden of seventy-five tons or upward, bound from a port on the Atlantic to a port on the Pacific, or vice versa, shall, before he proceeds on such voyage, make an agreement in writing or in print, with every seaman on board such vessel except such as shall be apprentice or servant to himself or owners, declaring the voyage or term of time for which such seaman shall be shipped. (R. S. § 4520.)"

Section 575 provides the penalty and measure of recovery for the violation of the preceding section. It was also a part of the act of 1790. The section reads:

"§ 575. *Penalty for Shipping Without Articles.* If any master of such vessel of the burden of fifty tons or upward shall carry out any seaman or mariner, except apprentices or servants, without such contract or agreement being first made and signed by the seamen, such master shall pay to every such seaman the highest price or wages which shall have been given at the port or place where such seaman was shipped, for a similar voyage, within three months next before the time of such shipping, if such seaman shall perform such voyage; or if not, then for such time as he shall continue to do duty on board such vessel; and shall moreover be liable to a penalty of $20 for every such seaman, recov-

erable, one-half to the use of the person prosecuting for the same, and the other half to the use of the United States. Any seaman who has not signed such a contract shall not be bound by the regulations nor subject to the penalties and forfeitures contained in this chapter. (R. S. § 4521.)"

Such research as time would permit has developed the following: Section 574 of title 46 U. S. C. first appeared in that phraseology in the Revised Statutes of 1873–74. A careful search of the statutes at large passed prior to the revision does not disclose any act of Congress amending the act of 1790. In 1866 Congress passed the first act looking to the compilation of the statutes (14 Stat. 74). The commissioners on revision completed their work in 1793, and the Revised Statutes as a whole were enacted into law June 22, 1874. The enacting statute (Rev. St. § 5596) expressly repealed all prior acts, "any portion of which is embraced in any section of said revision." Section 574 of title 46 was section 4520 of the Revised Statutes. In revising the statutes, all of the act of 1790 was deleted except the provisions applying to coasting voyages. By the express provisions of the enacting statute, the act of 1790 was repealed except as to the portions found in section 4520, Revised Statutes, and the following section 4521, which contained the penalty of the act of 1790.

Probably it was never the intention of Congress to weaken the remedies of seamen. A search of the Congressional Record and the official documents in the Los Angeles city library discloses nothing that throws any light on the matter. No report of the commissioners who made the revision can be found. It is possible that the commissioners had completed their revision of the chapter relating to seamen and had redrafted the act of 1790 to reconcile it with the act of 1872 prior to the passage of the amendatory act of January 15, 1873, and the effect of that act was not noticed. Whatever may have been the reason, the act of 1790 was so narrowed that it has no application to voyages to the republic of Mexico. The cases of The Crusader and The City of Mexico are no longer of any authority, as to voyages of that character.

### Conclusions.

It follows that the libelants' theory must fail. Upon the facts no case for the recovery of seamen's wages has been made out.

No effort has been made to determine the exact contract that was entered into further than to find that it was a share contract. It is not believed that, in an action for seamen's wages, it is proper or expedient to attempt to adjudicate share contracts with the accounting that is usually involved.

The libelants who signed releases have asked to be relieved of the releases on the grounds that they were signed under duress and by mistake. If it was found that the libelants were entitled to recover as wages sums disproportionate to the amounts received, the commissioner would be inclined to recommend that the releases be set aside. However, it does not appear necessary to pass on this matter, in view of conclusions reached.

### Recommendation.

That the libel and intervening libel be dismissed without prejudice to any right of action the libelants and intervening libelants may have under a specific contract.

The commissioner has spent in excess of five days in hearing and determining this matter. It is requested that his fee be allowed in such amount as the court considers reasonable. Inasmuch as the libelants sued in forma pauperis, it is doubtful whether there is any source from which the commissioner can be paid, unless the costs of the reference are taxed against the claimant.

R. L. Gray, of Los Angeles, Cal., for plaintiffs and interveners.

Murphy & Doherty, of Los Angeles, Cal., for defendants.

R. L. Gray, of Los Angeles, Cal., for intervener.

COSGRAVE, District Judge.

Under date of May 1, 1933, the court having heard exceptions of the libelants filed April 28, 1933, to commissioner's report filed April 25, 1933, pursuant to notice of hearing, etc., filed April 29, 1933, and thereafter having ordered this cause stand submitted with right to file brief in two days, and the libelants having thereupon filed memo of additional points and authorities under date of May 5, 1933, and the court being now fully advised after due consideration thereof, the exceptions to the report of the commissioner are ordered overruled and report confirmed; exception to complaining parties is allowed.